LEORIS AND COHEN, P.C., Plaintiff-Appellant, v. ROBERT L. McNIECE *et al.*, Defendants-Appellees.

Second District   No. 2—91—0651

Opinion filed March 24, 1992.

David Drenk, of Leoris & Cohen, P.C., of Highland Park, for appellant.

No brief filed for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

The plaintiff, Leoris and Cohen, P.C., filed a one-count complaint in the circuit court of Lake County seeking attorney fees and costs from the defendants, Robert L. McNiece and Mary McNiece, arising out of the plaintiff's representation of defendants in a medical malpractice action. The trial court granted the defendants' motion for summary judgment as to the claim for attorney fees and awarded the plaintiff, pursuant to an agreed order, $1,523 on its claim for costs.

The sole issue raised by the plaintiff on appeal is whether the trial court erred in granting summary judgment in favor of the defendants.

The following facts are relevant to this appeal and are gleaned from the various pleadings and exhibits on file. On September 20, 1986, the defendant, Robert McNiece, executed a contingent fee agreement which provided that the plaintiff would represent the defendants in a claim arising out of blood transfusions received at Victory Memorial Hospital on or about July 12, 1986. It also provided that "no attorney fee shall be due unless a recovery is effected for the client."

On October 28, 1986, the plaintiff filed suit as a "complaint for discovery" on behalf of defendant Robert McNiece. According to the plaintiff's affirmative defense to the defendants' counterclaim, it "further prosecuted" this action on behalf of Robert McNiece. There is no evidence in the record as to what the plaintiff did by way of "further prosecution" of the case.

The affirmative defense further alleges that on June 5, 1987, Richard Friedman, an associate of the plaintiff, terminated his association with the plaintiff except as to pending matters. Thereafter, on June 8, 1987, Robert McNiece retained Richard Friedman to represent him in an unrelated criminal matter. Robert McNiece paid a $2,500 retainer to Richard Friedman in three installments beginning June 8, 1987.

On December 21, 1987, Richard Friedman was substituted as the attorney for defendants in their medical malpractice action. On January 20, 1988, an appeal was filed in the medical malpractice action, and in March 1988 Richard Friedman died. On May 6, 1988, the plaintiff filed a separate action for medical malpractice on behalf of defendants and essentially based on the same facts underlying the original malpractice suit. The appeal in the original medical malpractice case was rendered moot due to the filing of the second suit.

On February 16, 1989, Robert McNiece executed a second contingent fee contract wherein he retained the plaintiff to represent him for claims arising out of his receiving blood transfusions at Victory

Memorial Hospital on or about July 11, 1986, and thereafter. According to the affirmative defense to the defendants' counterclaim, the plaintiff successfully defended several motions to dismiss the second malpractice suit, as well as a motion for summary judgment.

On October 16, 1989, the plaintiff received a handwritten letter from Robert McNiece. The letter reads:

"Mr. Leoris,

Regarding your bill of $1400 as far as we were aware the only thing your firm was to do was file the proper papers to keep the law suit [sic] alive. The only expenses we knew of and authorized were the ones that Richard incurred and he was paid for them in cash while he was alive.

We discussed this with Nancy Moore, at which time we also told her we did not know we had hired your firm to represent us.

Richard was our attorney and we do understand there was some confusion after his death.

Thank you

[signed]    Robert McNiece"

The plaintiff subsequently filed, pursuant to Supreme Court Rule 13 (134 Ill. 2d R. 13), a motion to withdraw, a copy of which is not included with the record, and on November 16, 1989, the court entered an order granting the plaintiff's motion to withdraw. The order does not specify the reason or basis for allowing the plaintiff to withdraw. Nor does the record include a transcript of any hearing regarding the motion to withdraw. The plaintiff admits, however, in its answer to the defendants' affirmative defense that "it withdrew *** after a complete breakdown of the attorney-client relationship occurred and non-payment by Defendants of costs advanced by Plaintiff." There is no other evidence in the record as to the basis of the plaintiff's motion to withdraw. The second suit against Victory Memorial Hospital was dismissed on February 22, 1990, for want of prosecution.

On January 8, 1991, the plaintiff filed its one-count complaint against the defendants seeking to recover certain costs advanced by the plaintiff on behalf of the defendants. The complaint further sought attorney fees based on the reasonable value of legal services performed by the plaintiff on behalf of the defendants. The reasonable value of the fees sought was for $9,375 and covered a period of time "after February of 1988 through November 16, 1989." The complaint seeks no costs or fees for any representation of the defendants prior to February 1988.

On February 19, 1991, Robert McNiece filed a counterclaim wherein he alleged that $2,500 paid by McNiece to Richard Friedman was not accounted for by the plaintiff. The counterclaim sought an accounting and a determination as to the parties' rights regarding the $2,500. The plaintiff answered the counterclaim and filed an affirmative defense wherein it alleged that the $2,500 paid by Robert McNiece was a retainer fee for Richard Friedman's representation of McNiece in a criminal matter. The affirmative defense further sought sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137).

The defendants subsequently filed a combined motion for judgment on the pleadings and for summary judgment. In that combined motion they essentially argue that the plaintiff is entitled to no attorney fees because under either the September 20, 1986, contingency fee contract or the February 16, 1989, contingency fee contract the plaintiff is not entitled to a fee unless "a recovery is effectuated for the client." The motion further maintains that the plaintiff is not entitled to a recovery based on *quantum meruit* because there exists a contract between the parties concerning the same subject matter upon which the *quantum meruit* claim rests.

On May 2, 1991, the trial court, pursuant to oral motion of the defendants, dismissed with prejudice the defendants' counterclaim. On May 7, 1991, the trial court granted the defendants' motion for summary judgment and included in that order language making the order appealable under Supreme Court Rule 304(a)(134 Ill. 2d R. 304(a)). The order does not indicate the basis for granting the defendants' summary judgment motion. The court further ordered that the plaintiff's remaining claim for costs be set for trial.

On May 21, 1991, the plaintiff filed a written motion for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) based upon the counterclaim filed by the defendants and later dismissed with prejudice by agreed order. On May 28, 1991, the trial court entered an order awarding the plaintiff attorney fees pursuant to its Rule 137 motion. Also on May 28, an agreed order was entered wherein judgment was entered in favor of the plaintiff and against the defendants in the amount of $1,523. Although the order does not specify such, we may presume that the $1,523 judgment was for the plaintiff's claim for costs as that was the only issue then remaining before the trial court. On June 6, 1991, the plaintiff filed its notice of appeal from the May 7, 1991, order granting summary judgment in favor of the defendants.

We begin by clarifying our jurisdiction to hear this appeal. The plaintiff states in its jurisdictional statement that it appeals pursuant

to Supreme Court Rule 304(a). While it is true that the order appealed from contains the language necessary to make it appealable under Rule 304(a), that language was rendered superfluous when the trial court disposed of the remaining claims in the case on May 28, 1991. At that point, the May 7 order became appealable pursuant to Rule 301. While such a distinction does not affect our jurisdiction in this case, we point it out as a matter of elucidation.

We also note that the defendants have not filed an appellate brief in this case. We will, however, consider the merits of the appeal pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

We turn then to the issue of whether the trial court properly granted summary judgment in favor of the defendants. The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of triable fact, and a motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) While the use of summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Purtill*, 111 Ill. 2d at 240.

The plaintiff argues that the trial court erred in granting summary judgment in favor of the defendants because it is entitled to recover, under a *quantum meruit* theory, the reasonable value of its services rendered to the defendants prior to its being discharged. It further asserts that the trial court erred as a matter of law when it held the plaintiff's cause of action was barred by the contingency fee agreement.

■■ ■ Our supreme court has held that a discharged attorney may recover on a *quantum meruit* basis a reasonable fee for services rendered before discharge. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 230; see *In re Estate of Callahan* (1991), 144 Ill. 2d 32, 38.) In *Callahan*, in addressing the issue of whether the discharged attorney's right to a *quantum meruit* recovery accrues at the time of discharge, the court stated that even though a contingency fee is generally paid out of the recovery for the client, when a client terminates the contract, the contract ceases to exist between the parties. (144 Ill. 2d at 40.) Therefore, the contingency term, whether the attorney wins, is no longer operative. (*Callahan*, 144 Ill. 2d at 40.) A

client cannot terminate the agreement and then resurrect the contingency term when the discharged attorney files a fee claim. (*Callahan*, 144 Ill. 2d at 40.) The contract either wholly stands or totally falls. (*Callahan*, 144 Ill. 2d at 40.) Furthermore, because *quantum meruit* is based on the implied promise of a recipient of services to pay for those services of value to him, the recipient would be unjustly enriched if he were able to retain the services without paying for them. *Callahan*, 144 Ill. 2d at 40.

In this case, while the order is silent, the trial court apparently granted summary judgment on the basis that the fee contract expressly stated that no fee would be due absent a recovery by the defendants, as that was the theory asserted by the defendants. Such a ruling is contrary to the holding in *Rhoades* and the language of *Callahan*. A contingency fee contract like the one in this case does not bar, as a matter of law, a discharged attorney from recovering the reasonable value of services rendered prior to discharge. To that extent, the trial court's ruling is erroneous.

That does not, however, entirely dispose of this appeal. The plaintiff, in its appellate brief, and the parties below, appear to treat the plaintiff's discontinued representation of the defendants as synonymous with being discharged. Such is not the case, however, as the plaintiff clearly moved to withdraw. Thus, we must decide what effect, if any, the plaintiff's motion to withdraw had on its right to a *quantum meruit* recovery for services provided prior to its withdrawal.

Our research has found one Illinois case in which an attorney sought, under a *quantum meruit* theory, compensation for services rendered after having withdrawn from representation of his client. In *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, the attorney, who represented the client pursuant to a contingency fee agreement, withdrew from representation because the client refused to pay certain retainer fees under the contract. (*Yates*, 172 Ill. App. 3d at 521-26.) The court held that an attorney may, during the course of litigation, withdraw from the case if accrued fees are demanded and not paid within a reasonable time. (*Yates*, 172 Ill. App. 3d at 527.) After such withdrawal, the attorney may recover for services rendered in the cause. (*Yates*, 172 Ill. App. 3d at 527.) The court concluded that the fees were not paid within a reasonable time and therefore the attorney was justified in moving to withdraw and was entitled to recover for services rendered up to his withdrawal. *Yates*, 172 Ill. App. 3d at 527.

In the present case, we are able to ascertain, from the undisputed allegations in the plaintiff's answer to the defendant's counterclaim, that the basis for the motion to withdraw was "a complete breakdown of the attorney-client relationship" and "non-payment by Defendants of costs advanced by Plaintiff." There is, however, no copy of the motion to withdraw in the record, no transcript of the hearing on the plaintiff's motion to withdraw, nor any other evidence of the circumstances surrounding any breakdown of the attorney-client relationship or any nonpayment of fees by the defendants. While the letter from Robert McNiece to the plaintiff suggests a dispute over fees and raises a question regarding the nature of the attorney-client relationship, it is insufficient, by itself, to establish whether the attorney-client relationship had in fact suffered a complete breakdown or whether the plaintiff had demanded payment of fees and such fees were not paid within a reasonable time. We note that even though we are ruling in favor of the plaintiff to the extent we are reversing the summary judgment, the party seeking relief in this court nevertheless has a responsibility to provide an adequate record on appeal to facilitate our review.

While either circumstance, if proved, would justify withdrawal from representation, and while such withdrawal would not prohibit the plaintiff from seeking a *quantum meruit* recovery, there remain questions of material fact as to either situation. Thus, we are unable to affirm the trial court's granting of summary judgment in favor of the defendants on this separate basis. We must, therefore, reverse the order granting summary judgment in favor of the defendants and remand for a determination of whether the plaintiff's withdrawal from its representation of the defendants was justified. If the court finds that the plaintiff justifiably withdrew from the case, then the plaintiff will be allowed to proceed on its claim for fees on a *quantum meruit* basis.

For the foregoing reasons, the order of the circuit court of Lake County granting the defendants summary judgment is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN and McLAREN, JJ., concur.