DEBBIE KANNEWURF *et al.*, Plaintiffs-Appellants, v. JAY D. JOHNS, Defendant (Law Offices of Nelson, Bement, Stubblefield and Rich, Intervenor-Appellee).

Fifth District    No. 5—93—0041

Opinion filed April 18, 1994.

Julie A. Garrett, of Kreuter & Gordon, P.C., of Clayton, Missouri, for appellants.

Thomas C. Rich, of Fairview Heights, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court: Plaintiffs, Debbie Kannewurf and Michael Kannewurf, appeal the trial court's award of attorney fees to the intervenor, the law firm of Nelson, Bement, Stubblefield & Rich, for its representation of plaintiffs in their personal injury action. Attorney Thomas C. Rich was the attorney handling plaintiffs' claim, and, therefore, we will

refer to Rich as the intervenor herein, rather than referring to the law firm. Although the parties present several subissues for review, the main issue of this appeal is whether an attorney representing a client under a contingent fee contract is entitled to a reasonable amount of compensation for his services before withdrawing, when the sole reason for the withdrawal is because of the client's refusal to allow the attorney to attempt to negotiate a settlement. For reasons we will more fully explain, we affirm the trial court's award of attorney fees.

The facts of this case are as follows: On June 29, 1989, Rich filed a complaint in negligence on behalf of plaintiff, Debbie Kannewurf, alleging that defendant, Jay D. Johns, had negligently driven into the rear of the Kannewurf vehicle, causing personal injury and property damage. On February 27, 1990, Rich filed a first amended complaint, adding a second count alleging loss of consortium by Michael Kannewurf, Debbie's husband. On October 22, 1991, Rich filed a motion to withdraw as plaintiffs' attorney, alleging that it had become "professionally impossible" to continue to represent plaintiffs and requesting that discovery be stayed for 60 days so that plaintiffs could find another attorney. On the same date, the trial court granted the motion to withdraw and stayed all discovery for 60 days.

On February 26, 1992, the plaintiffs and defendant Johns jointly filed a motion to adjudicate attorney's lien, alleging that the parties had settled the case for $120,000, with each party to bear its own costs and plaintiffs to satisfy all outstanding medical and legal liens. The motion also alleged that "on October 7, 1991, attorney[ ]Thomas C. Rich *** filed their [sic] Attorney's Lien, claiming a lien for one-third of $50,000 and costs of $2,356.23." The motion attached an October 7, 1991, letter from Rich to defense counsel as evidence of the attorney's lien.

On March 10, 1992, Rich filed a motion to award attorney fees, alleging that the parties had recently settled the case for $120,000 and that Rich was entitled to one-third of the $120,000 settlement. Attached to the motion was an affidavit signed by Rich, stating that he had personally worked between 250 and 300 hours on plaintiffs' case and further stating as follows:

"6. That in this case the plaintiffs were offered $50,000 to settle the case and in a lengthy and protracted meeting ($2^{1}/_{2}$ hours) which took place between both plaintiffs and *** Rich ***, Attorney Rich advised plaintiffs that he believed that he could settle the case for $75,000 to $100,000 by further immediate negotiations with the defendant's attorney, and that if the plaintiffs were interested in accepting said amount plaintiff's attorney could

get the case settled immediately but if they weren't interested in accepting that amount and wanted the entire policy of $300,000 then plaintiff's attorney would withdraw, assert his lien, and they could find new attorneys.

7. That plaintiffs asked for their file and indicated they did not want to accept $100,000, and began negotiating with the defense attorneys on their own and just after said meeting the defendant's attorney offered plaintiffs' [*sic*] $100,000 to settle the case."

On April 21, 1992, the trial court conducted the first of four hearings on the question of what, if any, fees were due attorneys out of the settlement of the underlying personal injury case. On July 2, 1992, eight days before the second hearing, plaintiffs filed a motion for summary judgment, claiming:

"6. That it is uncontested that Movants withdrew from their representation of Plaintiffs because Plaintiffs refused to settle their claims upon the terms Movants recommended.

7. That under Illinois law, the aforesaid reason for Movants' withdrawal does not constitute justifiable cause for withdrawal by an attorney."

Basically, plaintiffs argued through their motion for summary judgment that Rich gave plaintiffs an ultimatum of settling the case or he would withdraw. Rich argued that he never gave plaintiffs an ultimatum but only asked for authority to make a settlement demand of less than $300,000. The trial court found that the questions of whether the contingent fee contract was terminated and, if so, by whom and for what reasons, were questions of fact, and accordingly, the court denied plaintiffs' motion for summary judgment.

In summary, the testimony and other evidence adduced at all four of the hearings demonstrate that the parties had different views of how Rich came to withdraw from the case. Throughout the hearings, Rich maintained that he never issued plaintiffs an ultimatum to settle the case for a particular dollar amount. He insisted that plaintiffs had initially made a settlement demand of $300,000, which was defendant's insurance policy limit, and that they had never allowed him to negotiate for a settlement of less than $300,000, even though defense counsel had raised its offer of settlement from $25,000 initially to $50,000, the parties had tried to mediate a settlement, and Rich had advised plaintiffs by a letter dated October 7, 1991, that, in his opinion, the case was worth between $75,000 and $100,000. Rich claimed that he told plaintiffs that there was a strong possibility that they would obtain a verdict of zero damages if they took the case to trial, because Mrs. Kannewurf did not seek treatment for her injuries until several months after the accident. Plaintiffs maintained at trial that Rich had told them they

must settle for $50,000 or he would no longer represent them. Although other evidence was presented, we will discuss the additional evidence only as it is relevant to our resolution of the remaining issues.

The trial court entered an order finding that Rich was not entitled to compensation under the contingency fee contract with plaintiffs, but that he was entitled to recovery of attorney fees on a *quantum meruit* basis. The court awarded Rich $140 per hour for 224 hours of legal services and awarded costs in the amount of $2,356.23. A portion of these costs was awarded directly to the law firm of John E. Norton and Associates, for which Rich had worked when plaintiffs first came to see him. Rich and the Norton firm had agreed on the record to informally split the attorney fee award without the necessity of a court order to that effect.

■ Before discussing the merits of the case, however, we must first decide plaintiffs' motion to strike Rich's answer brief for failure to follow Supreme Court Rule 341. (134 Ill. 2d R. 341.) We have taken this motion, and Rich's response thereto, together with this appeal. Plaintiffs allege that Rich's brief "mischaracterizes the record on appeal, contains unsupported assertions which are outside of the record, and is devoid of appropriate references to the record." Plaintiffs assert that there are four main areas in which Rich's brief violates Rule 341. Rule 341 requires that all references to facts fairly and accurately reflect the evidence at the trial court and be supported by appropriate citations to the record. 134 Ill. 2d R. 341.

We have carefully reviewed the record in this case and do not find any violations of the rules in Rich's statements of fact. The statements of fact are, for the most part, accurately matched with correct citations to the record. Of course, the parties' interpretations of many of the same facts are diametrically opposed, but that is not unusual in a case such as this. Therefore, we deny plaintiffs' motion to strike Rich's brief.

We now turn to the merits of this appeal, and to plaintiffs' main argument, that Rich did not have justifiable cause for his voluntary abandonment of plaintiffs' personal injury case, and that, as a result, he is not entitled to an award of attorney fees for his work. Plaintiffs do not deny that Rich worked for over two years on their case, nor do they seriously dispute the amount of time he spent working on their case. Rather, plaintiffs claim that, although Rich was free to withdraw from the case given the fact that he followed the supreme court procedures for proper notice of the withdrawal (134 Ill. 2d R. 13), he is not entitled to reasonable compensation for his legal services provided to plaintiffs because he did not have justifiable cause

for resigning as plaintiffs' attorney. Plaintiffs claim that an attorney should not receive any compensation for his work on a case if he resigns because a client will not follow his advice about how settlement negotiations are conducted.

■ Plaintiffs claimed throughout the trial that Rich had forced an ultimatum upon them; specifically, that they must settle the case for $50,000 or find another attorney. However, at oral argument, counsel for plaintiffs stated that Rich's sole reason for withdrawing from the case was because plaintiffs would not allow him to negotiate a settlement below the $300,000 policy limit. Rich pointed out that plaintiffs had changed their version of the facts, and we agree, but find that it does not matter in any event. Regardless of what facts either side argues on appeal, we find that there was sufficient evidence from which the trial court could find that Rich had not forced an ultimatum on plaintiffs but he had withdrawn because, in his professional opinion, he could no longer represent plaintiffs. Thus, we are called upon to decide what appears to be an issue of first impression in Illinois, whether an attorney is entitled to reasonable compensation for legal services prior to his withdrawal from a contingent fee case, if his sole reason for withdrawing is because his clients do not want to negotiate a case in the manner he thinks best. We hold that an attorney is entitled to reasonable compensation under these circumstances.

Clearly, a client may discharge his or her attorney at any time, with or without cause, regardless of whether the attorney is representing the client under a contingent fee contract. However, the attorney is entitled to *quantum meruit* compensation for all work reasonably performed for the client prior to the discharge. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.) The reason for this rule is that the attorney-client relationship is based upon trust, and if the client does not trust the attorney, the client must be allowed to find another attorney. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.) Nevertheless, the discharged attorney is entitled to receive the reasonable value of the services provided to the client, so that the client will not be unjustly enriched by the value of the attorney's unpaid, but reasonable, services. *Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.

In the situation where the client fires the attorney retained under a contingent fee contract, the contract is held to no longer exist, so that the attorney cannot seek compensation under the terms of the nonexistent contract. (*Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.) At least two appellate court cases

have held that a contingent fee contract does not automatically bar an attorney who withdraws from a case from receiving compensation for legal services under a *quantum meruit* theory.

In *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115, the court held that the attorney was entitled to *quantum meruit* compensation even though he withdrew as the attorney for plaintiffs and even though he was employed under a contingent fee contract, because he withdrew for good cause. (*Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115.) In the *Reed Yates Farms* case, the court found that the attorney was justified for withdrawing from the case because the client refused to pay past-due retainer fees within a reasonable time after the attorney demanded that the fees be paid. As a separate, justifiable basis for withdrawing, the court held that because the client had filed a disciplinary action against the attorney the attorney was entitled to withdraw from the case on that basis as well and still receive a *quantum meruit* award of attorney fees. *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115.

In the *Leoris & Cohen* case, the court found that a complete breakdown in the attorney-client relationship is a justifiable basis for allowing an attorney to withdraw from a contingent fee case and still receive his fees on a *quantum meruit* basis. *Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.

In the case *sub judice*, plaintiffs argue that all decisions regarding settlement of a case are to be made exclusively by the client, and therefore, since Rich withdrew because plaintiffs would not allow him to negotiate a settlement of the case, Rich was not justified in withdrawing and, consequently, is not entitled to any compensation for his work. We disagree for two basic reasons.

First, the most fundamental aspect of an attorney's representation of a client is that he or she must act competently and with loyalty to the best interests of the client. (134 Ill. 2d, Preamble to Illinois Rules of Professional Conduct (Preamble), at 470.) However, as to the scope of an attorney's representation, the rules require: "A lawyer shall abide by a client's decisions concerning the objectives of representation *** and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." (134 Ill. 2d R. 1.2.) Additionally, the rules provide that an attorney may request to withdraw from a case because the client, by his or her conduct, "renders it unreasonably difficult for the lawyer to carry out the employment effectively." 134 Ill. 2d R. 1.16(a)(3).

The Illinois Rules of Professional Conduct acknowledge that

situations will arise in which the policies underlying the various rules will be in tension with each other. (134 Ill. 2d, Preamble, at 470.) This is just such a situation. Here, Rich was in a position where, in his professional judgment, plaintiffs were not acting in their own best interests by refusing to allow him to negotiate at a level below their demand of $300,000. However, the ultimate decision as to settlement and the objectives of representation were in plaintiffs' control. (134 Ill. 2d R. 1.2.) By making an unreasonable decision concerning the objectives of representation and how settlement negotiations were to occur, plaintiffs put Rich in a position where it became unreasonably difficult for him to carry out his employment effectively. 134 Ill. 2d R. 1.16.

Second, other cases in which an attorney withdrew from contingent fee employment but was allowed to collect the reasonable value of his work are not so different from the facts of the instant case. As we have stated, the courts have upheld awards of attorney fees on a *quantum meruit* basis to attorneys who withdrew from contingent fee cases when the reason for the withdrawal was that the client had not paid past-due retainer fees (*Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115), where the client filed a disciplinary action against the attorney (*Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115), and when there was a complete breakdown in the attorney-client relationship (*Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060; *Reed Yates Farms, Inc. v. Yates* (1988), 172 Ill. App. 3d 519, 526 N.E.2d 1115). Indeed, there was sufficient evidence in this case for the trial court to reasonably determine that the decision of the plaintiffs to refuse to allow Rich to negotiate towards a possible settlement, at a time when his professional judgment was that a settlement was not only possible but in plaintiffs' best interests, forced a complete breakdown in the attorney-client relationship similar to that discussed in both the *Leoris & Cohen* case and the *Reed Yates Farms* case. Therefore, we hold that Rich had justifiable cause for resigning from the case and, therefore, was entitled to the reasonable value of his services up to the date of withdrawal.

■ Plaintiffs next argue that the trial court erred in denying their motion for summary judgment because there was no dispute as to the fact that Rich withdrew without justifiable cause. Obviously, our resolution of the previous issue, that the trial court had ample evidence from which to find that Rich's withdrawal was justified, disposes of this issue.

■ Plaintiffs next argue that even if Rich withdrew for justifiable cause, he is not entitled to an award of attorney fees because the evi-

dence failed to show that his services benefitted plaintiffs. We disagree. We do not choose to detail all of the evidence presented at all four days of hearings in this case, but a brief summary of the evidence concerning Rich's work for plaintiffs will illustrate why we feel that the trial court had ample evidence from which to award Rich attorney fees. In addition to filing all of the pleadings in the case up to the date of the withdrawal, Rich also interviewed and corresponded with several doctors, attended numerous depositions and submitted and responded to a host of other pretrial discovery, met and corresponded with defense counsel about all aspects of the case, and conferred with plaintiffs regularly, giving them advice about their case both before and after his withdrawal. Additionally, at some time prior to his withdrawal, Rich and defense counsel, with the consent of plaintiffs, attempted to mediate the case. The mediation conference was also prior to the meeting between plaintiffs and Rich, in which Rich explained to plaintiffs that he thought the case was worth between $75,000 and $100,000, that plaintiffs would have to lower their settlement demand of $300,000 in order to settle the case, and that there was a real possibility of a verdict of zero if they tried the case to a jury.

We now must decide if the trial court's decision awarding the attorney fees was an abuse of discretion. (*In re Estate of Callahan* (1991), 144 Ill. 2d 32, 43-44, 578 N.E.2d 985, 990.) The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case. (*Merchandise National Bank v. Scanlon* (1980), 86 Ill. App. 3d 719, 408 N.E.2d 248.) The question of whether the trial court abused its discretion is not whether the court of review agrees with the trial court, but whether the trial court acted arbitrarily, unconscientiously, without reason, or beyond the bounds of law. *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 491 N.E.2d 894.

Where the attorney's fees are based upon the theory of *quantum meruit* rather than an express contract, the court is literally to award the attorney "as much as he deserves." (*Lee v. Ingalls Memorial Hospital* (1992), 232 Ill. App. 3d 475, 478, 597 N.E.2d 747.) In making this determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work *in the community*, and the benefits resulting to the clients. *Lee v. Ingalls Memorial Hospital* (1992), 232 Ill. App. 3d 475, 597 N.E.2d 747.

■ The trial judge was presented with an abundance of evidence regarding all of these factors. From the evidence presented, the trial court could reasonably find that Rich had personally worked far more than 224 hours; that he was a skilled and experienced personal injury attorney; that the case was unusually difficult and could easily be lost at trial due to the nature of plaintiffs' damages; that Rich personally handled almost the entire case and actually handled all of the work listed on his itemized time sheet; that the usual and customary charge for personal injury cases, when averaged among personal injury attorneys practicing in St. Clair County, Illinois, is at least $140 per hour; and that plaintiffs received enormous benefits from Rich's work, in that they could not have settled their case for $120,000 without the work he did for them prior to his withdrawal. Based upon our review of the evidence, we do not find that the trial judge abused his discretion in its award of attorney fees to Rich.

■ We note that plaintiffs argue that the trial court committed reversible error in awarding Rich $140 per hour, since Rich had estimated his usual and customary fee at only $100 per hour. We disagree that the court committed any error on this point. The evidence was that Rich limits his practice to plaintiff's personal injury work and social security claims. In his personal injury work, he does not charge an hourly fee, because all of those cases are taken on a contingent fee basis. The only work done on an hourly basis is the social security work, wherein, Rich testified, the fees are limited to $100 per hour by law. Rich worked for the law firm of John E. Norton when plaintiffs hired him. Norton's firm was entitled to an undetermined portion of the fee awarded to Rich. Norton testified in an evidence deposition taken by plaintiffs that his average fee, if calculated on an hourly basis, was more than $300 per hour. Based upon all of this evidence, the trial court did not err in awarding Rich $140 per hour in attorney fees.

Plaintiffs make two additional assignments of reversible error but do not cite to any authority in support of these purported errors. Therefore, plaintiffs have waived these errors on appeal. *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.

■ Plaintiffs finally argue that Rich failed to prove the existence of any attorney's lien and, therefore, the trial court was without subject matter jurisdiction to award attorney fees. While we do not necessarily agree with plaintiffs that the nonexistence of an attorney's lien would deprive the court of subject matter jurisdiction, we do not have to resolve that issue today. Clearly, as we have previously stated, where the attorney withdraws from the case, he

cannot recover under the former contingent fee contract, because the withdrawal works to rescind the contract. (*Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.) Rather, the recovery, if allowed, is based upon the equitable principle of *quantum meruit*. (*Leoris & Cohen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.) Furthermore, the attorney lien statute to which plaintiffs refer (770 ILCS 5/1 (West 1992)) is to be strictly construed but is in addition to, and not instead of, the common law remedies of breach of contract and *quantum meruit*. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 508 N.E.2d 377.) Finally, even if the attorney's lien statute was the only remedy available to Rich for the collection of his fees, the evidence is undisputed that he did serve a written lien on defendant Johns and that Johns was actually aware of the lien. Plaintiffs and defendant filed a joint motion for adjudication of attorney's lien and attached a copy of Rich's lien letter sent to defense counsel in support of their request that the trial court adjudicate the lien. Plaintiffs cannot now be allowed to claim that no lien ever existed.

For all of the reasons stated, we affirm the trial court's award of attorney fees and costs.

Motion to strike brief denied; judgment affirmed.

WELCH and MAAG, JJ., concur.