■ Jack S. Ingber et al., Doing Business as Ingber & Lagarenne, Appellants-Respondents, v Joan Sabato, Respondent-Appellant. [645 NYS2d 918] —Spain, J. Cross appeals from an order of the Supreme Court (Williams, J.), entered April 3, 1995 in Sullivan County, which, *inter alia,* awarded reasonable counsel fees to plaintiffs and awarded sanctions against plaintiffs.

Plaintiffs are partners engaged in the practice of law. Defendant was one of the legatees and coexecutors of the estate of her ex-husband (hereinafter decedent) pursuant to decedent's last will and testament which was admitted to probate on July 5, 1984. Pursuant to the will, defendant inherited virtually the entire estate, including decedent's interest in various corporations. Defendant entered into a retainer agreement with plaintiffs in December 1988 which required a $20,000 retainer and provided that plaintiffs were entitled to one third of the total amount recovered in a surcharge proceeding against David Slutsky in his capacity as coexecutor of decedent's estate for losses and damages sustained by the estate due to Slutsky's alleged malfeasance.

In February 1989 plaintiffs commenced a proceeding in Surrogate's Court on defendant's behalf for, *inter alia,* the re-

moval and surcharge of Slutsky. Within two weeks the proceeding was withdrawn without prejudice due to pending negotiations between the coexecutors and owners of the corporations regarding estate matters. During this time period Joseph Murphy, the attorney representing decedent's estate, located a buy/sell agreement executed by the owners of the corporations in 1979 which addressed the issue of stock transfer upon a shareholder's death. Thereafter, Murphy forwarded a copy of the agreement to the parties involved in the Surrogate's Court proceeding. It is undisputed that, with plaintiffs' assistance, an agreement was reached and finalized on or about March 10, 1989 whereby defendant was appointed to a management position at the hotel with an increased salary and the stock certificates to which defendant was entitled were forwarded to plaintiffs.

In August 1989 defendant informed plaintiffs that she was terminating the attorney-client relationship. In July 1990 plaintiffs commenced the instant action alleging that defendant's termination of the attorney-client relationship was designed to avoid her obligation to them for counsel fees, seeking the contingency fee as enumerated in the retainer agreement and, in the alternative, $4,000,000 in counsel fees based upon quantum meruit; additionally, plaintiffs sought $5,000,000 in punitive damages for defendant's alleged attempt to circumvent her legal bills.* Defendant counterclaimed for a refund of $18,000 from the $20,000 retainer which had been previously paid to plaintiffs. Thereafter, defendant moved to dismiss the complaint, for summary judgment on the counterclaim and for costs and sanctions due to plaintiffs' frivolous conduct. Plaintiffs cross-moved for summary judgment. Supreme Court awarded plaintiffs reasonable counsel fees in the amount of $34,625, sanctioned plaintiffs in the amount of $2,500 for seeking punitive damages and ordered plaintiffs to pay $100 in costs. Plaintiffs appeal and defendant cross-appeals.

Initially, we reject plaintiffs' contention that Supreme Court erred by denying the cross motion for summary judgment on their first cause of action and in awarding them fees under quantum meruit. It is axiomatic that "[t]he failure of [a] proponent of a motion for summary judgment to establish a prima facie entitlement to such relief requires the denial of that motion, regardless of the sufficiency of the opposing

---

* There is no evidence in the record as to what other attorneys in the area would have charged for similar services; however, decedent's estate paid $2,000 in legal fees on behalf of Slutsky in defense of defendant's Surrogate's Court proceeding.

papers" (*Briones v BSC Sec. Corp.*, 224 AD2d 200; *see, Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853). In support of their cross motion plaintiffs submitted the retainer agreement which provided, in relevant part: "So far as fee arrangement is concerned, we will require a [$20,000] retainer, which will be applied on our services rendered for the above. Also, our total fee will be contingent on the amount recovered in surcharging [Slutsky]. The total fee will be based on one-third of the total amount recovered." Plaintiffs also submitted an affidavit of plaintiff Jack S. Ingber wherein he alleges that defendant's discharge of plaintiffs was a plan to circumvent her legal bills and that, since defendant had obtained everything that she sought in the originally instituted surcharge proceeding, plaintiffs were entitled to the contingency fee as agreed in the retainer.

In our view, plaintiffs' submissions failed to establish an entitlement to summary judgment (*see, Briones v BSC Sec. Corp., supra*); however, defendant's submissions, consisting of her own affidavit and additional affidavits from her attorney, Slutsky and Murphy, would have been sufficient to overcome an entitlement to summary judgment. Significantly, both defendant and Slutsky averred that during the negotiations which ensued after the surcharge proceeding was discontinued, it was determined that Slutsky had not mishandled the estate and/or that the surcharge proceeding would not have been successful or beneficial to the estate. Murphy stated that after he located and forwarded the buy/sell agreement, defendant and Slutsky were able to reach an agreement regarding the estate. In light of the clear language of the contract and the undisputed fact that Slutsky was neither removed as executor nor surcharged, we conclude that there is ample support in the record for Supreme Court's denial of plaintiffs' cross motion for summary judgment (*see, Christiana v Joyce Intl.*, 198 AD2d 690; *cf., Zuckerman v City of New York*, 49 NY2d 557). It is inconceivable that plaintiffs requested a $4,000,000 fee, either on a contingency basis or on quantum meruit, for representation which they alleged to consist of approximately 400 hours of legal work, but which Supreme Court properly determined to be less than 200 hours.

Further, we reject plaintiffs' contention that Supreme Court erred by granting defendant's motion to dismiss their contingency fee cause of action. As previously discussed, the strength of the affidavits of defendant, Murphy and Slutsky, taken in conjunction with the retainer agreement, sustained defendant's burden of proving that plaintiffs were not entitled to a

contingency fee (*see*, *Backer v Schenectady Trust Co.*, 216 AD2d 712, 713-714, *lv denied* 86 NY2d 711). We agree with defendant that the timely discovery of the owners' buy/sell agreement was the linchpin to the resolution of the parties' differences. Clearly, the Surrogate's Court proceeding had little or no effect on said resolution. Plaintiffs' assertions are nothing more than unsubstantiated, conclusory allegations which do not rebut the evidence submitted by defendant in furtherance of her motion to the effect that there was not full performance of the contract and that she discharged plaintiffs for the sake of both personal relations with Slutsky and the financial sake of the estate.

Next, the courts clearly "possess the traditional authority 'to supervise the charging of fees for legal services' pursuant to their 'inherent and statutory power to regulate the practice of law' " (*Koral v Koral*, 185 AD2d 298, 299, quoting *Matter of First Natl. Bank v Brower*, 42 NY2d 471, 474). It is equally clear that the proper measure of plaintiffs' compensation is quantum meruit (*see*, *Smith v Boscov's Dept. Store*, 192 AD2d 949, 950) and that the amount to which they, as discharged attorneys who had been employed under a contingent fee contract, are entitled depends on the court's interpretation of various factors in its determination of the reasonable value of the services rendered (*see*, *supra*, at 950-951; *see also*, 7 NY Jur 2d, Attorneys at Law, § 160). Such factors include, *inter alia*, the terms of the percentage agreement (*see*, 7 NY Jur 2d, Attorneys at Law, § 150), the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved and amounts customarily charged for similar services in the same locality (*see*, *Smith v Boscov's Dept. Store*, *supra*, at 950; *see also*, 7 NY Jur 2d, Attorneys at Law, § 160). In our view, Supreme Court did not improvidently exercise its discretion in granting defendant's request to determine the reasonable value of plaintiffs' legal services without conducting further proceedings. Nor should the award be disturbed, insofar as the record adequately supports Supreme Court's determination that, contrary to plaintiffs' request for $4,000,000 in quantum meruit, an award of $34,625 (based on an hourly fee of $200 for partners and $100 for associates) was just and reasonable.

Finally, our review of the record indicates that a sufficient basis exists for Supreme Court to impose sanctions in the instant case (*see*, 22 NYCRR 130-1.1 [c]; *see also*, *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553, 556-557); however, Supreme Court's failure to articulate the reasons why the monetary amount of $2,500 in sanctions was deemed an ap-

propriate amount to be imposed (*see*, 22 NYCRR 130-1.2; *see also*, *Draliuk v Ferretti*, 221 AD2d 585; *Walker v Weinstock*, 213 AD2d 631, 631-632; *Briguglio v Rockefeller Ctr.*, 204 AD2d 503, 504; *Carchi v Carchi*, 203 AD2d 505, 506; *Martino v Martino*, 194 AD2d 591, 592) requires remittal for appropriate written findings.

White, J. P., Casey, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as imposed a sanction of $2,500; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.