JOHNNY ROBERT GUESS, JR., Plaintiff v. TERRY ANTHONY PARROTT, BRIDGET CHRISTINA PARROTT, d/b/a PARROTT TRUCKING, Defendants

No. COA02-1071

(Filed 16 September 2003)

**1. Attorneys— contingent fee—multiple attorneys—quantum meruit claim by attorney**

An attorney who has provided a legal service pursuant to a contingency fee agreement and then been fired has a viable claim in quantum meruit against the former client or its subsequent representative. The first of plaintiff's two attorneys in this negligence action properly stated a claim, and the trial court properly denied the second attorney's motion to dismiss.

**2. Attorneys— contingency fee—apportionment between attorneys—no right to jury trial**

The trial court did not err by denying a law firm's request for a jury trial to apportion a contingency fee between two attorneys. The right to a trial by jury exists only by statute or if it existed in the common law at the time the North Carolina Constitution of 1868 was adopted. The rule of quantum meruit recovery by attorneys is modern, and the apportionment of attorneys' fees among the various lawyers who have represented a party has not been regulated by statute.

**3. Attorneys— contingency fee—apportionment between attorneys—quasi-quantum meruit approach**

A trial court in North Carolina may use the quasi-quantum meruit approach to apportion a contingency fee between attorneys if it believes that such a method aptly characterizes what the discharged attorney is entitled to receive. In this case, the trial court's findings were sufficient and there was no abuse of discretion.

Appeal by plaintiff and the firm of Lloyd T. Kelso & Associates from order entered 10 April 2002 by Judge Richard D. Boner in Gaston County Superior Court. Heard in the Court of Appeals 20 May 2003.

*Lloyd T. Kelso & Associates, by Lloyd T. Kelso, for the firm of Lloyd T. Kelso & Associates and for plaintiff, appellants.*

*Melrose, Seago & Lay, P.A., by Randal Seago, for the firm of Melrose, Seago & Lay, P.A., appellees.*

McCULLOUGH, Judge.

This appeal arises out of a dispute between attorneys for the firms of appellant Lloyd T. Kelso & Associates and appellee Melrose, Seago & Lay, P.A., as to entitlement to attorneys' fees stemming from the underlying case. The underlying case involved an automobile accident that occurred on 24 July 1999 in which plaintiff Johnny Robert Guess, Jr., was injured when his vehicle collided with a tractor-trailer driven by defendant Terry Anthony Parrott.

Shortly after the accident, plaintiff's father and brother, on 26 July 1999, contacted the appellee law firm of Melrose, Seago & Lay, P.A., and made arrangements with Randal Seago to represent plaintiff. On 29 July 1999, plaintiff and Randal Seago entered into a contingency fee agreement in which plaintiff promised to pay appellee one-third of any recovery. Further, plaintiff would reimburse appellee for expenses and costs advanced by it.

Mr. Seago went about the task of representing plaintiff. He filed a complaint on 6 January 2000. The parties negotiated at mediation, asking for $750,000.00. A settlement could not be reached as defendants would not go above $200,000.00. Plaintiff would not lower his demand under $650,000.00. Therefore, this matter went to trial on 29 January 2001. During the trial, a "high/low agreement" was made by the parties that guaranteed plaintiff $250,000.00, plus $15,000.00 for

costs, regardless of the outcome, but capped recovery at $800,000.00. Defendants increased their offer to $350,000.00, but it was not accepted. The trial ended deadlocked at 10-2 in favor of defendants, and a mistrial was declared.

Following the unsuccessful trial, Seago and other attorneys at appellee law firm were involved in negotiations with their client, plaintiff, and defendants. Plaintiff made a settlement offer of $500,000.00, while defendants were willing to settle for $265,000.00. Both offers were rejected by the respective parties.

Plaintiff became dissatisfied with the representation provided to him by appellee law firm and informed them of such. Acceding to plaintiff's wishes, appellee filed a motion to withdraw on 23 April 2001. An order granting such was entered on 20 April 2001.

Thereafter, plaintiff secured the services of appellant Lloyd Kelso of Lloyd T. Kelso & Associates. Plaintiff entered into a contingency fee agreement with Kelso, promising to pay 35% of the amount recovered. Once retained, Kelso reviewed plaintiff's file that he had brought over from appellee. Kelso developed a strategy and hired several new experts. Kelso also revisited witnesses, including some who did not testify in the previous trial.

By September 2001, Kelso approached defendants about settlement. Kelso made a new request on behalf of plaintiff in the amount of $1,286,421.30. On 14 January 2002, a hearing was held as to the validity of the "high/low agreement" from the first trial and the issue of apportioning attorneys' fees between plaintiff's attorneys. The parties were ordered into mediation and eventually settled plaintiff's case for $525,000.00 on 22 January 2002. This amount was able to be procured, appellant contends, largely because of its work on the case. Further, appellant contends that had the "high/low agreement" not been in effect, the recovery could have been more. Either way, this amount was in excess of what plaintiff was offered during appellee's representation of plaintiff. The attorneys' fees issue was not resolved in mediation.

On 4 February 2002, appellee filed a motion requesting a portion of the attorneys' fees in the case. Appellant filed its motion in opposition on 15 February 2002, requesting a jury trial on the issue of the reasonable value of appellee's services. A hearing was held during the 25 February 2002 Mixed Session of Cleveland County Superior Court on 28 February 2002 before The Honorable Richard D. Boner as to whether a jury trial should be had. It was determined that the trial

court would conduct a bench trial on the attorneys' fees issue during the 26 March 2002 Civil Session of Gaston County Superior Court before the same judge.

After the trial court heard the arguments and evidence on that date, it filed its order on 17 April 2002. In this order and in addition to the facts already discussed herein, the trial court found that both firms entered into contingency fee agreements with, provided competent legal services to, and advanced costs and expenses on behalf of plaintiff. In finding of fact #12, the trial court found that

> [p]rior to the Plaintiff's discharge of Melrose, Seago & Lay, P.A., the law firm had 244.72 hours in attorney and staff time invested in the case and this amount of time was reasonable and necessary to competently represent the Plaintiff's interests in this matter. Prior to its discharge by the Plaintiff, Melrose, Seago & Lay, P.A. had provided significant services to the Plaintiff in this matter.

As to appellant's time in the case, the trial court found that it had "invested 332.02 hours of attorney and staff time in this case." The trial court then found that:

14.

> The case between the Plaintiff and the Defendants was ultimately settled by Lloyd T. Kelso & Associates on behalf of the Plaintiff in the amount of $525,000.00, thereby generated a contingency fee of $183,750.00. During 2000, both Lloyd T. Kelso & Associates and Melrose, Seago, & Lay, P.A. charged $200.00 per hour for litigation services. Lloyd T. Kelso & Associates incurred $40,565.73 in advanced costs and expenses on behalf of the Plaintiff during the time it represented the Plaintiff in this case. Lloyd T. Kelso & Associates performed additional and different work in preparing the case for trial including having additional medical evaluations performed of the Plaintiff, hiring another accident re-construction expert and taking depositions.

15.

> After Lloyd T. Kelso & Associates undertook representation of the Plaintiff, it was able to settle the case for $150,000.00 over the Defendants' previous high offer made during the first trial in this matter, and $260,000.00 more than the Defendants offer made immediately after the first trial concluded.

16.

Although Lloyd T. Kelso & Associates undertook additional and different work on behalf of the Plaintiff in preparing the case for trial, this does not change the fact that Melrose, Seago & Lay, P.A. did a competent job of representing the Plaintiff at the first trial, and that Melrose, Seago, & Lay P.A.'s performance during the first trial on behalf of the Plaintiff was within the range of competence to be expected of attorneys practicing personal injury law in North Carolina.

Based on these findings, the trial court concluded that:

4. The representation of Melrose, Seago, & Lay P.A. conferred a valuable benefit upon the Plaintiff for which it has not been compensated.

5. Melrose, Seago & Lay, P.A. is entitled to recover the reasonable value of its services in quantum meruit from the Plaintiff from the contingency fee funds generated by the successful settlement of his case for the work it performed on behalf of the Plaintiff until unilaterally discharged by the Plaintiff on April 20, 2001.

6. It would be unjust for the Plaintiff and/or Lloyd T. Kelso & Associates to be enriched by the legal services and representation provided by Melrose, Seago, & Lay P.A. without having to compensate Melrose, Seago, & Lay P.A. for those services.

7. Considering the totality of the circumstances of this case, the reasonable value for services for which Melrose, Seago, & Lay P.A. is entitled to recover is $86,500.00 from the $183,750.00 contingency fee generated by the ultimate successful settlement of this case.

Appellant was awarded the remaining funds from the generated fee, and both parties were awarded their costs. Appellant Lloyd T. Kelso & Associates appeal from this order.

Appellant makes several assignments of error and presents the following questions on appeal: Did the trial court commit reversible error (I) by denying its motion to dismiss appellee's motion to determine attorneys' fees; (II) by entering judgment after conducting the hearing without a jury after a request was made for such; (III) in finding that appellee was entitled to recover attorneys' fees of $86,500.00 pursuant to quantum meruit; and (IV) by abusing

its discretion by awarding $86,500.00 as that amount was not supported by the evidence.

I.

[1] Appellant contends that the trial court erred by denying its motion to dismiss for several reasons, including that appellee failed to state a claim upon which relief could be granted. We disagree.

> On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citations omitted).

Appellee's motion alleges that it provided valuable legal services to plaintiff pursuant to its contingency fee agreement. Subsequent to the agreement and services, appellee was unilaterally discharged by plaintiff. The case was settled afterward by another law firm, appellant, which has received compensation. Appellee's motion asked for three alternative remedies, two of which based an award of attorneys' fees in quantum meruit.

The first inquiry is whether such a claim exists. This Court has had occasion to address the issue of whether "an attorney may recover on a contingent fee contract when his clients have discharged him prior to final disposition of the case." *Covington v. Rhodes*, 38 N.C. App. 61, 63, 247 S.E.2d 305, 307 (1978), *disc. review denied*, 296 N.C. 410, 251 S.E.2d 468 (1979). In holding that an attorney may not recover on the contract but only the reasonable value of his services, this Court stated:

> A contract for legal services is not like other contracts. The client has the right to discharge his attorney at any time, and it is our view that upon such discharge the attorney is entitled to recover the reasonable value of the services he has already provided. As the New York Court noted . . .: "The rule secures to the attorney the right to recover the reasonable

value of the services which he has rendered, and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential."

*Id.* at 66, 247 S.E.2d at 309.

Further, in a more recent case, this Court allowed a discharged attorney to pursue an action in quantum meruit against the settling attorney itself, and not the client. *See Pryor v. Merten,* 127 N.C. App. 483, 485-87, 490 S.E.2d 590, 592-93 (1997), *disc. review denied,* 347 N.C. 578, 502 S.E.2d 597 (1998).

North Carolina has not addressed the issue of whether an attorney, who before being discharged performed significant services for a client in a contingent fee relationship, may recover from the settling attorney in quantum meruit. Other courts have addressed and resolved the issue. *Joye v. Heuer,* 813 F.Supp. 1171 (D.S.C. 1993) (court approved of a quantum meruit distribution of the fees among the attorneys in direct proportion to the hours worked in the case); *see also Potts v. Mitchell,* 410 F.Supp. 1278 (W.D.N.C. 1976) (discharged attorney's quantum meruit recovery was granted from funds being held as the contingency fee). We find these federal decisions persuasive and accordingly we conclude the trial court properly allowed the quantum meruit action by [the discharged attorney] to proceed. To require [the discharged attorney] to proceed against party plaintiffs would unfairly require plaintiffs to pay attorney's fees in excess of the one-third contingency fee to which they agreed. *See Covington,* 38 N.C. App. at 65, 247 S.E.2d at 308. We believe the more equitable result is to allow the discharged attorney to proceed against the new attorney for the prior attorney's rightful share of the total attorney's fees.

*Id.* at 487, 490 S.E.2d at 592-93.

Thus, a claim by an attorney who has provided legal service pursuant to a contingency fee agreement and then fired has a viable claim in North Carolina in quantum meruit against the former client or its subsequent representative. Appellee's motion properly states a claim, and the supporting facts necessary thereunder.

Appellant's other arguments in support of this assignment of error are without merit. Thus, this assignment of error is overruled.

GUESS v. PARROTT

[160 N.C. App. 325 (2003)]

II.

[2] Appellant next contends that the trial court erred by denying its request for a jury trial on the factual issue of determining the reasonable value of appellee's services rendered to plaintiff before discharge. Appellant argues that Article I, Section 25 and Article IV, Section 13 of our state constitution mandate that this issue be presented to a jury.

Section 25 of our state constitution states: "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable." N.C. Const. art. I, § 25 (2001).

> [A]rticle I, section 25 contains the sole substantive guarantee of the important right to trial by jury under the state constitution while article IV, section 13 ensures that the right as defined in article I will be available in all civil cases, regardless of whether they sound in law or equity.

*Kiser v. Kiser*, 325 N.C. 502, 507, 385 S.E.2d 487, 489 (1989).

We disagree with appellant, however, and hold that determinations of the reasonable value of services rendered by an attorney, in situations such as the one before us, is the duty of the trial court, reviewable on appeal only for abuse of discretion.

In *Kiser*, our Supreme Court further stated the law pertaining to the right to a jury trial:

> The right to trial by jury under article I has long been interpreted by this Court to be found only where the prerogative existed by statute or at common law at the time the Constitution of 1868 was adopted. Conversely, where the prerogative did not exist by statute or at common law upon the adoption of the Constitution of 1868, the right to trial by jury is not constitutionally protected today. Where the cause of action fails to meet these criteria and hence a right to trial by jury is not constitutionally protected, it can still be created by statute.

*Id.* at 507-08, 385 S.E.2d at 490 (citations omitted).

Appellee argues that it is entitled to reasonable compensation under the theory of "quantum meruit," an equitable remedy, which is defined by Black's Law Dictionary to mean "as much as deserved." *Black's Law Dictionary*, 1243 (6th ed. 1990). Under current North

Carolina law, discussed above, an attorney, working pursuant to a contingency fee contract, who is discharged without cause by his or her client, is entitled to recover the reasonable value of his or her services. This is the so-called "modern rule." *See Covington*, 38 N.C. App. at 64, 247 S.E.2d at 308; *see also* George L. Blum, Annotation, *Limitation to Quantum Meruit Recovery, Where Attorney Employed Under Contingent-Fee Contract is Discharged Without Cause*, 56 A.L.R. 5th 1 (1998).

As can be gathered by the name, this was not always so. *Covington*, examining the law of other jurisdictions, noted that the "older rule, and still the rule in some jurisdictions," allowed an attorney so positioned to recover the entire contingent fee. *Id.* at 64, 247 S.E.2d at 307; *see, e.g., Higgins v. Beaty*, 242 N.C. 479, 88 S.E.2d 80 (1955) (involving a fixed fee contract and holding that an attorney may recover on the contract). This was so because courts would apply the general law of contract. *See O'Brien v. Plumides*, 79 N.C. App. 159, 161, 339 S.E.2d 54, 55, *cert. improvidently allowed*, 318 N.C. 409, 348 S.E.2d 805 (1986). However, as explained in section I of this opinion, the general contract rules were cast aside in favor of the modern rule for reasons of public policy dealing with clients and their ability to maintain their counsel of choice. *See also id.*

Thus, appellee points out that until the adoption of the modern rule, clients presumably had no right to unilaterally discharge an attorney and force him to pursue a quantum meruit claim, and therefore the right to a jury trial is not protected by Article I, Section 25. We agree. This case falls within the realm of a number of claims cited in the *Kiser* opinion that have been found to have no right to a jury trial:

> *See, e.g., In re Huyck Corp. v. Mangum, Inc.*, 309 N.C. 788, 309 S.E.2d 183 (no jury trial right where sovereign immunity would have prevented the suit at common law); *In re Clark*, 303 N.C. 592, 281 S.E.2d 47 (no jury trial right in case involving parental rights); *In re Annexation Ordinances*, 253 N.C. 637, 649, 117 S.E.2d 795, 804 (1961) ("The right to a trial by jury is not guaranteed in those cases where the right and the remedy have been created by statute since the adoption of the Constitution [of 1868]"); *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 28 S.E.2d 201 (no jury trial right in petition for trucking franchise certificate); *Belk's Department Store, Inc. v. Guilford County*, 222 N.C. 441, 23 S.E.2d 897 (no jury trial right for controversy

over tax valuation); *Unemployment Compensation Comm. v. Willis*, 219 N.C. 709, 15 S.E.2d 4 (1941) (no jury trial right in cases involving administration of the tax laws); *Hagler v. Highway Commission*, 200 N.C. 733, 158 S.E. 383 (1931) (no jury trial right under the Workmen's Compensation Act); *McInnish v. Bd. of Education*, 187 N.C. 494, 122 S.E. 182 (1924) (no jury trial right for discretionary administrative decision regarding site for school building); *Groves v. Ware*, 182 N.C. 553, 109 S.E. 568 (1921) (jury of six constitutionally acceptable in insanity hearing); *Phillips v. Phillips*, 73 N.C. App. 68, 326 S.E.2d 57 (1985) (no jury trial right for equitable distribution action).

*Kiser*, 325 N.C. at 508, 385 S.E.2d at 490.

We note the case of *Pryor v. Merten*, quoted at length above, as an example. *Pryor*, 127 N.C. App. at 485-87, 490 S.E.2d at 592-93. That case involved a motion in the cause by the discharged attorney and a hearing before the trial court. It is unclear but doubtful that a request for a jury trial was made. As can be gleaned from the quote reproduced in section I, the position of the trial court is central to this inquiry. *See also id.* at 487, 490 S.E.2d at 592-93. Further, other jurisdictions recognize the role of the trial court in this situation. *See Ingber v. Sabato*, 229 A.D.2d 884, 887, 645 N.Y.S.2d 918, 920 (1996) ("[T]he courts clearly 'possess the traditional authority "to supervise the charging of fees for legal services" pursuant to their "inherent and statutory power to regulate the practice of law." ' "). *Id.* (quoting *Koral v. Koral*, 185 A.D.2d 298, 299, 586 N.Y.S.2d 288, 290 (1992) (quoting *Matter of First Natl. Bank v. Brower*, 42 N.Y.2d 471, 474, 368 N.E.2d 240, 1242 (1977))); *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693, 713 N.E.2d 247, 250 (1999) (" 'The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case.' "). *Id.* (quoting *Kannewurf v. Johns*, 260 Ill. App. 3d 66, 74, 632 N.E.2d 711, 716 (1994)).

The apportionment of attorneys' fees among the various lawyers who have represented a party has not been regulated by statute and is therefore within the province of the trial court. Accordingly, appellant had no right to have the reasonable value of appellee's services determined by a jury, as this issue is committed to the sound discretion of the trial court.

This assignment of error is overruled.

## III. & IV.

[3] Appellant's final two arguments contend that the trial court erred in determining and awarding the $86,500.00 amount to appellee. We disagree.

We recognize that no case in North Carolina dealing with the discharge of an attorney who is rendering legal services pursuant to a contingency fee contract has specifically set forth any guidelines for the trial court to follow when determining the reasonable value of the discharged attorney's services. It is noted that North Carolina trial courts are not unfamiliar with such a position. Trial courts are often asked to exercise their discretion in awarding attorneys' fees. *See, e.g.*, N.C. Gen. Stat. § 6-21.1 (2001) (allows trial court to award, in its discretion, attorneys' fees in a personal injury case when there was an unwarranted refusal by an insurance company in a suit and the recovery was less than $10,000.00); *Washington v. Horton*, 132 N.C. App. 347, 357, 513 S.E.2d 331, 334-35 (1999) (setting forth factors for the trial court to consider in making its award). The factors set forth in *Horton* do not necessarily set forth a proper guide in the current context as it deals with a much narrower determination because of the parameters set forth in the statute.

Courts from other jurisdictions have set forth factors helpful in the current situation. The New York case of *Ingber v. Sabato* states:

> It is equally clear that the proper measure of plaintiffs' compensation is quantum meruit and that the amount to which they, as discharged attorneys who had been employed under a contingent fee contract, are entitled depends on the court's interpretation of various factors in its determination of the reasonable value of the services rendered. Such factors include, *inter alia*, the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved and amounts customarily charged for similar services in the same locality.

*Ingber*, 229 A.D.2d at 887, 645 N.Y.S.2d at 920 (citations omitted). *See also Wegner*, 305 Ill. App. 3d at 693, 713 N.E.2d at 250 ("In making its determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case,

the usual and customary charge for that type of work in the community, and the benefits resulting to the client.").

These factors are consistent with our own case law when trial courts have discretion to award attorneys' fees. For example, N.C. Gen. Stat. § 75-16.1 (2001) authorizes attorneys' fees in unfair and deceptive trade practices cases. *See United Laboratories, Inc. v. Kuykendall*, 335 N.C. 183, 437 S.E.2d 374 (1993). In *Kuykendall*, our Supreme Court held:

> The Court of Appeals held that there was sufficient evidence before the trial court to support an award of attorneys fees pursuant to N.C.G.S. § 75-16.1, but it concluded the trial court made insufficient findings on the question of the reasonableness of the amount awarded. The Court of Appeals, therefore, remanded the case for findings of fact "as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." . . .

> In addition to these findings suggested by the Court of Appeals, the trial court should consider and make findings concerning "the novelty and difficulty of the questions of law"; "the adequacy of the representation," the "difficulty of the problems faced by the attorney," especially any "unusual difficulties," and "the kind of case . . . for which the fees are sought and the result obtained[.]" The court may also in its discretion consider and make findings on "the services expended by paralegals and secretaries acting as paralegals if, in [the trial court's opinion], it is reasonable to do so."

*Id.* at 195, 437 S.E.2d at 381-82 (citations omitted). *See also Owensby v. Owensby*, 312 N.C. 473, 475-77, 322 S.E.2d 772, 774-75 (1984) (same factors for attorneys' fees in divorce and alimony actions); *Lowder v. All Star Mills, Inc.*, 82 N.C. App. 470, 479-80, 346 S.E.2d 695, 700-01 (1986) (Attorneys' fees for derivative shareholder action awarded by N.C. Gen. Stat. § 55-55(d) use the same factors); *see generally, Middleton v. Russell Group, Ltd.*, 126 N.C. App. 1, 15-19, 483 S.E.2d 727, 735-37, *disc. review denied*, 346 N.C. 548, 488 S.E.2d 805 (1997) (ERISA actions); *see also* N.C. State Bar, Rule 1.5 (2002).

We hold that the factors set forth above are proper guidelines for the trial courts to follow when determining the reasonable value of a discharged attorney's services. These determinations are reviewable upon appeal only for abuse of discretion.

In the present case, the trial court made several findings of fact and conclusions of law. These noted that: (1) appellee hired an accident reconstruction expert and two other experts to evaluate the client's physical condition; (2) the amount promised to appellee under the contingency fee contract was 1/3; (3) proof of liability in this case was difficult; (4) defendant and insurer vigorously defended the case; (5) settlement offers from defendant; (6) "it was reasonable for the Plaintiff to have two (2) attorneys at trial given the questionable issue of liability, and the fact that the case had the potential of a very large award for the Plaintiff if the jury found the Defendants to be liable"; (7) the hours worked by appellee, reproduced above in finding of fact #12; (8) the hours worked by appellant and its contingency fee contract amount of 35%; (9) the amount charged by the attorneys; (10) settlement offers and results obtained by appellant; (11) the competency of appellee; and (12) the work provided by each firm.

The trial court awarded appellee $86,500.00. This amount represents its proportionate amount, based upon hours of work put into the case, of the total contingency fee, $183,750.00, generated by plaintiff's case.

First, we hold that the trial court made sufficient findings to support its award of attorneys' fee. The trial judge presiding over the hearing on attorneys' fees was the same judge that presided over the mistrial. He was in the best position to make the determination of ability and skill of the parties, as well as to the difficulty of the case.

Secondly, the trial court did not abuse its discretion in awarding to appellee the amount that it did, using the method that it did. As we have said, the trial court has broad discretion in awarding attorneys' fees in the present situation, capped only by the principle that a client cannot be required to pay more than the contingent fee to which he agreed with his current counsel (35%). *See Merten*, 127 N.C. App. at 487, 490 S.E.2d at 592-93. Thus, the trial court could have awarded a fee based on charges for hourly work (X hours at X price = reasonable services). Further, the trial court could have adjusted the award up or down, considering what the true value of the services to the client amounted to in its opinion.

In the present case, the trial court employed a method described by other jurisdictions as "quasi-quantum meruit" recovery. *See* 56 A.L.R. 5th at 102-03.

[T]he court seemed to employ a "quasi-quantum meruit" approach in that it held that the attorney was entitled to a percentage of the amount awarded the client but that the percentage was to be determined by limiting the sum due from the client to that recovered by the successor attorney and apportioning it by comparing the nature and amount of the work done by the subject attorney to that performed by the successor attorney.

*Id.* (referring to *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1978)); *see also Goldstein and Price, P.C. v. Tonkin & Mondl, L.C.*, 974 S.W.2d 543 (Mo. Ct. App. 1998); *Gary E. Rosenberg, P.C. v. McCormack*, 250 A.D.2d 679, 672 N.Y.S.2d 892 (1998). *But see Jones & Granger v. Johnson*, 788 So.2d 381 (Fla. Ct. App. 2001)) (attorney not entitled to portion of award, but only quantum meruit).

We hold that in North Carolina, a trial court situated as the one in the present case may employ such a method if it believes, in its discretion, that such a method aptly characterizes what the discharged attorney is entitled, or is as much as he deserves.

Therefore, as we find that the trial court did not abuse its discretion in any manner in handling the present matter, its ruling and order is

Affirmed.

Judges WYNN and ELMORE concur.